## UNITED STATES v. HEFLER et al.

### No. 138, Docket 20478.

Circuit Court of Appeals, Second Circuit.

Feb. 13, 1947.
Writ of Certiorari Denied April 28, 1947.
See 67 S.Ct. 1202.

832

Fred D. Kaplan, of New York City (I. Maurice Wormser and Jacob W. Friedman, both of New York City, of counsel), for appellants.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner, Keith Brown, Harold J. McAuley and William M. Regan, Asst. U. S. Attys., all of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND and CLARK, Circuit Judges.

SWAN, Circuit Judge.

Each of these three appellants was convicted,[1] after trial, of receiving leather jackets stolen in interstate commerce, knowing the same to have been stolen, in violation of 18 U.S.C.A. § 409. The appeal challenges (1) the sufficiency of the evidence to prove the appellants' knowledge of the theft, (2) the proof that the goods were stolen in interstate commerce, (3) the admission of certain evidence, (4) the denial of a motion for a new trial, and (5) the refusal to issue a writ of habeas corpus ad testificandum to establish an alleged jurisdictional defect in aid of the motion for a new trial. We shall consider these contentions seriatim.

1. With respect to the claim that a verdict of acquittal should have been directed because of the insufficiency of the

[1] Hefler and George Levy were convicted under one indictment and Al Levy under a separate indictment; the two indictments were consolidated for trial.

evidence to establish the appellants' knowledge that the goods were stolen, little need be said. It was stipulated that 28 cartons, containing 1400 leather jackets, while in process of shipment in interstate commerce from New York City to points in other states were stolen on June 7, 1945 by John Sullivan, a truck driver for Scott Bros., contract drivers for the Pennsylvania Railroad, from the consignor, American Sheep Lined Coat Company. Sullivan delivered the cartons in his truck to Fisher, who purchased them with knowledge that they were stolen; and Fisher in turn sold them to Kaufman who also had knowledge. The appellants bought them from Kaufman. He had pleaded guilty to a separate indictment charging him with the same crime as the appellants, and was a witness against them. If his testimony was believed there was no lack of proof as to the appellants' guilty knowledge. He testified repeatedly that he told them that the transaction was "illegitimate" and that the goods were "stolen." The appellants argue that his testimony was unworthy of belief; but plainly that was an issue for the jury, not the trial judge, to determine. Moreover certain conduct of the appellants tended to corroborate his story. They accepted from Kaufman, whose name they knew, invoices made out in the fictitious name of Bronson, and drew their checks in payment for the jackets to the fictitious Bronson; and before they received the goods the cartons had been mutilated so as to obliterate the names of consignor and consignee, which might well cause a purchaser to be suspicious of the source of the goods. The trial court was clearly right in refusing to direct a verdict for lack of proof of guilty knowledge.

2. In arguing that there was insufficiency of proof that the goods were stolen while moving in interstate commerce, the appellants urge (a) that the prosecution failed to prove that the theft was from a truck or any of the other places specified in the statute, and (b) that their stipulation, expressly conceding that the goods were stolen in interstate commerce, was vitiated because when asked from whom they were stolen counsel replied "from the consignor." These are extraordinary contentions to present for the first time on appeal. Each is plainly an after-thought, never suggested at the trial; neither has the slightest merit. Counsel for the defendants informed the court: "Your Honor, we agreed that I would stipulate, to save time, that these goods were stolen while in interstate commerce by Sullivan, [and] sold to Fisher * * *". In formulating the stipulation nothing was said to intimate any departure from this agreement; and without objection by the defendants the court charged the jury that the parties had stipulated that the goods "were stolen while they were a part of or constituted an interstate shipment of freight or express, so that that particular issue is in no way involved in the case to be decided by the jury."

(a) If, as the stipulation conceded, the goods were stolen while in interstate commerce, the theft necessarily occurred after they were loaded on the truck driven by Sullivan, for only then did they get into the stream of commerce. United States v. Fox, 2 Cir., 126 F.2d 237; Sharp v. United States, 5 Cir., 280 F. 86; Wolk v. United States, 8 Cir., 94 F.2d 310. Moreover, confirmation that they were stolen while on the truck is supplied by Fisher's testimony that the cartons were transferred to his premises from Sullivan's truck.

(b) Equally unsound is the argument that the stipulation establishes that the cartons were never delivered to the carrier and consequently never moved in interstate commerce because of the additional concession that they were stolen "from the consignor." If counsel intended his reply to the question "Stolen from whom?" to have the meaning now asserted for it, he was deliberately tricking the prosecutor and the court into believing that a necessary element of the crime had been conceded when it had not. We should hesitate to ascribe any such intention to counsel and fortunately we are not compelled to do so, for the reasonable meaning of his response to the district attorney's question does not contradict the prior concession that the goods were stolen while in interstate commerce. The question was equivalent to ask-

ing whose goods were stolen, and the answer meant that they were the consignor's goods, not that the consignor had possession of them at the moment of the theft. They could properly be described as the consignor's goods even though the general property had passed to the consignees and only a security title been reserved by the consignor. Possession of the goods was proved to be in the trucking company by the concession that they were in interstate commerce when stolen. The truck-driver had only custody of them for his employer; 2 Bishop, Criminal Law, 9th Ed., § 858; Commonwealth v. Brown, 4 Mass. 580. The exact time at which the theft occurred was the moment when Sullivan with the requisite guilty intent turned his truck off the normal route he would have followed to his legitimate destination. Whether he had previously formed the intent to steal or formed it at that moment is immaterial. See Weisberg v. United States, 49 App.D. C. 28, 258 F. 284.

■ 3. We find no merit in the appellants' objections to the admission of evidence. The claim that evidence of other crimes was admitted is not borne out by the record. Any harm which might otherwise have resulted from policeman Rosenfeld's testimony that he seized certain merchandise because he suspected that it might be "the proceeds of other larcenies," was cured by his testimony on cross-examination that investigation disclosed that the seized merchandise had been lawfully acquired by the defendants and was returned to them. There was no error in admitting the evidence regarding prices. Weiss was properly qualified before she testified on this subject. Kaufman's testimony concerning prices was elicited on redirect examination after defense counsel had opened this line of testimony on cross-examination. Neither do we see error in the admission of Lerner's testimony.

■ 4. Concededly the granting or denial of a motion for a new trial is a matter within the discretion of the trial court. We do not think Judge Coxe abused his discretion in denying the motion. He accorded an extensive hearing at which the newly discovered witness, Golkow, was examined at great length, and he came to the conclusion that Golkow's testimony was not of a character likely to change the result of the trial. With this conclusion we agree.

■ 5. The defendants applied for a writ of habeas corpus to bring Sullivan from the Lewisburg Penitentiary in order that he might testify in aid of their motion for a new trial. The testimony they hoped to elicit was that he had formed the intent to steal the cartons of leather jackets before he received them from the consignor. Their theory is that if such intent did precede the loading of Sullivan's truck, then the goods never got into interstate commerce. The fallacy of this theory we have already demonstrated in the discussion of Point 2, supra.

Finding no error in the record we affirm the judgment.