<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2294

                         UNITED STATES,
                           Appellee,

                               v.

                   JOSE MIGUEL MATEO-SANCHEZ,
                     Defendant, Appellant.

                      ____________________

No. 97-2295

                         UNITED STATES,
                           Appellee,

                               v.

            SANTOS DE AZA-PAEZ, A/K/A SANTOS DE ASA,
                     Defendant, Appellant.

                      ____________________

No. 98-1100

                         UNITED STATES,
                           Appellee,

                               v.

                     RAFAEL PEREZ-CABRERA,
                     Defendant, Appellant.

                      ____________________

No. 98-1101

                         UNITED STATES,
                           Appellee,

                               v.

                     CARLOS JULIO CIPRIANO,
                     Defendant, Appellant.

                      ____________________

No. 98-1102

                   UNITED STATES OF AMERICA,
                           Appellee,

                               v.

                   VICTOR HERNANDEZ-CANARIO,
                     Defendant, Appellant.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Carmen Consuelo Cerezo, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,
Hall, Senior Circuit Judge,
                   and Lipez, Circuit Judge.

                     _____________________

    Teodoro Mndez-Lebrn for appellant Jos Miguel Mateo-Snchez.
    Luis Rafael Rivera for appellant Santos de Aza-Paez.
    Linda Backiel for appellant Rafael Prez-Cabrera.
    Edgardo Rodrguez-Quilichini, Assistant Federal Public
Defender, with whom Joseph C. Laws, Jr., Federal Public Defender,
was on brief for appellant Carlos Julio Cipriano.
    Francisco M. Dolz-Snchez, by appointment of the Court, for
appellant Vctor Hernndez-Canario.
    Jos A. Quiles-Espinosa, Senior Litigation Counsel, with whom
Guillermo Gil, United States Attorney, Camille Vlez-Riv,
Assistant United States Attorney,  Nelson Prez-Sosa, Assistant
United States Attorney, and Jos A. Ruiz-Santiago, Assistant United
States Attorney, were on brief, for appellee.

                      ____________________

                       February 3, 1999
                      ____________________

         HALL, Senior Circuit Judge.  Defendants Jos Miguel
Mateo-Snchez ("Mateo"), Santos de Aza-Pez ("de Aza"), Rafael
Prez-Cabrera ("Prez"), Carlos Julio Cipriano ("Cipriano"), and
Victor Hernndez-Canario ("Hernndez") appeal their convictions and
sentences for conspiracy to possess with intent to distribute 380
kilograms of cocaine in violation of 21 U.S.C.  841(a)(1) and
846.  The district court sentenced Mateo, de Aza, Cipriano, and
Hernndez to 292 months in prison, and sentenced Prez to 151
months in prison.  We have jurisdiction under 28 U.S.C.  1291 and
18 U.S.C.  3742(a), and we affirm.
                            FACTS
         Acting on a tip from an informant that drugs were to be
smuggled into the Los Colchos area on the night of May 2, 1996, a
joint task force of U.S. Customs agents and Puerto Rico police
officers set up surveillance of the area.  Los Colchos is a heavily
wooded and uninhabited coastal area that borders a naval base.  The
area can be accessed only by a small dirt road ("Los Colchos Road")
that connects to a major road ("Road #3").  During a perimeter
inspection of the area, agents found a black Mazda pickup truck
hidden by bushes that fit the description of the truck that the
informant had claimed would be used in the smuggling operation.  In
addition, while driving along Los Colchos Road towards Road #3,
agents and officers passed within inches of a three-car caravan.  
The officers saw a green station wagon with one occupant, followed
by a red Mazda pickup truck with two occupants and a gray Dodge
pickup truck with two occupants.  The officers left the scene to
meet with other agents, and then returned to Los Colchos Road,
where they positioned themselves in a wooded area approximately 150
feet from a gate ("Algodones gate"), which blocks vehicular access
to a dirt road that leads from Los Colchos Road to Algodones beach.
         At approximately 10:30 p.m., with a bright moon in the
sky, agents heard the sound of a motor boat approaching, and
observed the black Mazda pickup previously seen parked in the
bushes, and the green station wagon and the red Mazda pickup that
had been part of the caravan, drive down Los Colchos Road and stop
at the Algodones gate.  The agents watched as five individuals got
out of the vehicles and met together for several minutes.  The
agents were unable to see the individuals' faces or to hear what
they said.
         Two of the individuals got into the black Mazda and drove
up Los Colchos Road towards Road #3.  The agents radioed ahead to
other agents, who were positioned at the entrance to Los Colchos
Road, and requested them to detain the black Mazda.  As the black
Mazda approached the agents, the passenger, Cipriano, threw a
cellular telephone out the window.  Agents detained both Cipriano
and the driver, Hernndez.  A second cell phone was found next to
Hernndez.  Cipriano was wearing black clothing.
         About five to ten minutes later, the agents at Algodones
gate observed one of the remaining three individuals get into the
green station wagon and drive towards Road #3.  Agents radioed
ahead, and the green station wagon was also stopped.  The agents
detained the driver, Mateo, and found a third cell phone in the
pickup.  Mateo was wearing black clothing.
         At the same time that the individual got into the green
station wagon, the other two remaining individuals started walking
down the dirt road towards Algodones beach.  Shortly thereafter,
agents observed five or six individuals walk up the trail to
Algodones gate while carrying packs on their shoulders.  These
individuals placed the packs between some bushes, and walked back
towards Algodones beach.  These individuals were not seen again.   
         A short time later, agents observed the two individuals
who had been seen meeting at Algodones gate walk up the trail to
Algodones gate while carrying packs on their shoulders.  The
individuals placed their packs in the bushes with the other packs,
got into the red Mazda pickup, and drove up Los Colchos Road
towards Road #3.  The agents again radioed ahead, and agents
stopped the red Mazda as it approached Road #3.  The agents
detained the driver, Cabrera, and the passenger, de Aza.  Cabrera
and de Aza were both wearing black clothing that was wet and
covered with sand.  It did not rain that night.
         The agents waited a while longer, and then investigated
the scene.  The agents seized a total of eight packs from the
bushes, six large sacks and two smaller ones.  The sacks weighed
approximately 380 kilograms, and their contents tested positive for
cocaine.  In addition, the agents found an assault rifle with the
sacks.  Nearby, the agents also found the grey Dodge pickup truck
that was seen in the first three-vehicle caravan.  Inside the
pickup, the agents found ammunition, a knitted black cap, and a
black T-shirt.
         Cipriano, Hernndez, Mateo, Prez, and de Aza were
indicted on one count of conspiracy to possess with intent to
distribute approximately 380 kilograms of cocaine.  All five
defendants pled not guilty.  At the close of the government's case,
the district court denied all five defendants' Rule 29 motions for
judgment of acquittal.  The defendants did not testify at trial,
and all five defendants were convicted.  Cipriano, Hernndez,
Mateo, and de Aza were sentenced to 292 months in prison.  Prez
was sentenced to 151 months in prison.
                          DISCUSSION
                              I
         Hernndez and Cipriano contend that the police lacked
probable cause to arrest them.  However, both Hernndez and
Cipriano failed to make a pretrial challenge to the indictment, and
have therefore failed to preserve this issue for review on appeal.  
United States v. Latorre, 922 F.2d 1, 6 (1st Cir. 1990), cert.
denied, 502 U.S. 876 (1991).
                              II
         All five defendants contend that the district court erred
by denying their Rule 29 motions for judgment as a matter of law
because there was insufficient evidence to support their
convictions.  The defendants argue that the evidence established
their mere presence at the scene without establishing their actual
participation in the conspiracy.  We will reverse the district
court's denial of the defendants' Rule 29 motions only if, viewing
the entirety of the evidence in the light most favorable to the
government and drawing all legitimate inferences from that
evidence, no rational trier of fact could have found the defendants
guilty beyond a reasonable doubt.  See United States v. Reed, 977
F.2d 14, 17 (1st Cir. 1992).  The district court did not err.
         The government introduced evidence that showed that the
five defendants passed within inches of agents as they drove in a
caravan down a dirt road to an isolated beach.  The defendants then
met with each other late at night, in a deserted and heavily wooded
area that had limited access, as a motor boat approached at the
time and place where an informer had told police drugs would be
smuggled, and where in fact approximately 380 kilograms of cocaine
was offloaded.  The defendants were wearing dark clothing, carrying
cell phones, and driving pick up trucks and a station wagon to help
transport the large quantity of cocaine.  Prez and de Aza were
seen carrying the packs that contained cocaine.  An assault weapon
was found with the cocaine, and one of the trucks driven into the
area contained a bag with ammunition.  The defendants offered no
plausible explanation for their presence in this area so late at
night.  The evidence therefore supported the jury's verdict for
conspiracy to possess with intent to distribute approximately 380
kilograms of cocaine.  See United States v. Cruz-Paulino, 61 F.3d
986, 999 (1st Cir. 1995) (circumstances in which presence implies
participation); United States v. Tejeda, 974 F.2d 210, 213 (1st
Cir. 1992) (jurors allowed to use common sense and draw reasonable
inferences based on "natural inclinations of human beings"); United
States v. Ortiz, 966 F.2d 707, 712 (1st Cir. 1992) (inference that
criminals rarely invite innocent persons to witness crimes), cert.
denied, 506 U.S. 1063 (1993).
                             III
         Hernndez and Cipriano contend that the district court
erred by attributing to them at sentencing an improper amount of
cocaine because there was no evidence to demonstrate that such a
large amount of cocaine was foreseeable.  We will reverse the
district court's quantity determination only if it was clearly
erroneous.  See United States v. Miranda-Santiago, 96 F.3d 517, 524
(1st Cir. 1996).  The district court did not err.
         It was proper to attribute to Hernndez and Cipriano all
reasonably foreseeable quantities of cocaine that were within the
scope of the conspiracy.  See id.  Hernndez and Cipriano were
present at the smuggling location with three other coconspirators
where they were to meet a boatload of smugglers, suggesting a
large-scale operation.  The conspirators used three pick up trucks
and a station wagon, suggesting that a large quantity of drugs
would need to be transported.  An assault weapon was found with the
cocaine, suggesting that the amount of drugs would be worth
protecting.  The district court's finding that Hernndez and
Cipriano were liable for the full amount of cocaine was therefore
not clearly erroneous.

                              IV
         Hernndez, Cipriano, Prez, and de Aza contend that the  
district court erred by denying their requests for a two-level
downward departure for their roles as minor participants under
U.S.S.G.  3B1.2.  We will reverse the district court's denial of
a request for a minimal participant downward departure only if its
finding that the defendants were not minor participants was clearly
erroneous.  See United States v. Gonzlez-Soberal, 109 F.3d 64, 73
(1st Cir. 1997).  The defendants had the burden to prove their
entitlement to a minor participant downward departure.  See id.  
The district court did not clearly err because the defendants
failed to satisfy their burden.  See United States v. Coneo-
Guerrero, 148 F.3d 44, 50 (1st Cir. 1998) (affirming district
court's denial of minor participant departure to defendants who
claimed status as transporters of cocaine with less responsibility
than deceased boat captain).
         In addition, Prez argues that the district court
deprived him of his due process right to be sentenced on the basis
of substantially correct information because the court limited its
consideration of the participants in the conspiracy to his
codefendants.  This argument is without merit because the district
court specifically considered individuals implicated in the
conspiracy other than Prez's codefendants.  After considering the
evidence that Prez wished the district court to consider, the
district court concluded that the evidence fell far short of
convincing the court that Prez's role in the offense was minor.  
The district court therefore did not deprive Prez of his due
process rights.
                              V
         All five defendants contend that the district court erred
by enhancing their sentences under U.S.S.G.  2D1.1(b)(1) for
possession of a weapon in connection with the conspiracy.  We
review the factual findings underlying the district court's
dangerous weapon enhancement for clear error.  United States v. Lagasse, 87 F.3d 18, 21-22 (1st Cir. 1996).  The district court did
not err.
         Ammunition was found in one of the pickup trucks that was
initially driven down the Los Colchos Road.  The presence of
ammunition in that truck suggests that the weapon was possessed by
the coconspirators well before the boat was offloaded.  In
addition, Prez and de Aza were seen placing sacks of cocaine where
the gun was found.  From this location, the weapon was readily
available to protect both the conspirators and the drugs.  Once the
government demonstrated that the weapon was "readily available to
protect either the participants themselves during the commission of
the illegal activity or the drugs and cash involved in the drug
business," the burden shifted to the defendants to persuade the
court "that a connection between the weapon and the crime [wa]s
clearly improbable."  See United States v. McDonald, 121 F.3d 7, 10
(1st Cir. 1997) (government's burden satisfied by showing gun found
in bathroom of defendant's house that was command post for drug-
trafficking activities).  The defendants, however, failed to
satisfy their burden of demonstrating that the connection between
the weapon and the conspiracy was clearly improbable.  See id.(defendant failed to satisfy burden by failing to provide
evidentiary support for denial of knowledge of weapon or to suggest
explanation for presence of gun).  Therefore, the district court
did not err by enhancing the defendants' sentences under U.S.S.G.
2D1.1.
                              VI
         Prez and de Aza contend that they were deprived of their
right to a fair trial because the district court failed to strike
as irrelevant and prejudicial references made at the trial to the
assault weapon and ammunition found at the scene.  Although Prez
waived this argument by failing to object when the government
offered the gun into evidence, see United States v. Taylor, 54
F.3d 967, 972-73 (1st Cir. 1995), we will give him the benefit of
the doubt and address the merits of his claim.
    Prez and de Aza argue that the weapon was irrelevant
because the government failed to introduce evidence linking them to
the weapon.  However, as discussed above, ammunition found in one
of the trucks suggests that the weapon was available to the
conspirators well before the boat was offloaded.  In addition, de
Aza was seen placing a sack of cocaine with other sacks of cocaine
where the weapon was found.  Consequently, the government did
provide evidence connecting Prez and de Aza to the weapon.
    Prez and de Aza argue that, although the weapon was
mentioned in the indictment, the weapon was not relevant to any
element of the offense charged.  We disagree.  The assault weapon
was relevant because it was one of the means by which the
defendants protected themselves and the cocaine conspiracy.  SeeUnited States v. Cresta, 825 F.2d 538, 554 (1st Cir. 1987), cert.
denied sub nom., Impemba v. United States, 486 U.S. 1042 (1988).
    Prez and de Aza also argue that the weapon was
prejudicial to their defense because it presented a clear danger of
overwhelming the evidence.  Although evidence unfavorable to the
defense is always to some extent prejudicial, the weapon was not
impermissibly prejudicial.  Cf. id.  In addition, the admission of
the weapon could not have overwhelmed the 380 kilograms of cocaine
unloaded in furtherance of the conspiracy.
                             VII
    Mateo contends that the district court erred by allowing
the government to comment on his silence at trial.  Specifically,
Mateo argues that when the prosecutor framed arguments to the jury
in the form of, "Ask yourselves" what the defendants were doing in
the Los Colchos area on the night in question, the prosecutor was
in fact commenting on the fact that Mateo had not testified at
trial.  We disagree.  The prosecutor's statements cannot be
construed as a comment on Mateo's silence.  See United States v.   
Lavoie, 721 F.2d 407, 408 (1st Cir. 1983), cert. denied, 465 U.S.
1069 (1984).  Therefore, there was no error.
                          CONCLUSION
    Based on the foregoing, we affirm the judgment of the
district court.
    AFFIRMED.

</body>

</html>